UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

NATALIE WHITE,                                           **DOCKET NO.: CV-22-5628**

                                   Plaintiff,

                    -against-

CITY OF LONG BEACH,
COMPTROLLER INNA RESNICK
(in her official and personal capacity),
CITY MANAGER DONNA GRAYDEN,
(in her official and personal capacity)

                                                        **COMPLAINT**

                                   Defendants.          ***JURY TRIAL DEMANDED***
-------------------------------------------------------------------X

      Plaintiff, **NATALIE WHITE**, by and through her attorneys, the Law Offices of Frederick

K. Brewington, as and for her Complaint, against the Defendants, respectfully sets forth:

**PRELIMINARY STATEMENT**

      1.     This is a civil action seeking monetary relief (including past and on going economic

loss), compensatory and punitive damages, disbursements, costs and fees for violations of the

Plaintiff's rights, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

et seq. (as amended), 42 U.S.C. § 2000(d) (Title VI), 42 U.S.C. §1983, the Americans with

Disabilities Act, *as amended* (herein "The ADA")§ 42 U.S.C. 12112, the Rehabilitation Act of 1973

("RCA")  29 U.S.C. § 794, § Section 504 of the Rehabilitation Act, and Section 1557 of the

Affordable Care Act.,  and New York State's Human Rights Law, Executive Law Art. 15, 290 and

296 of the Human Rights Law.

      2.     Specifically, the Plaintiff alleges that the Defendants engaged in discrimination and

retaliation and negligently, wantonly, recklessly, intentionally and knowingly sought to and did

wrongfully deprive Plaintiff of the appropriate employment position and title and pay through acts that were taken against Plaintiff because of her race, color, and gender, and opposing discrimination. These acts resulted in misrepresentation, misinformation, negative impact regarding Plaintiff, humiliation, embarrassment, depravation of job opportunities, loss of income and retirement benefits, permanent injury and harm and other results which continue to mount.

3.     Specifically, the Plaintiff alleges that the collective Defendants engaged in discrimination and retaliation and negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive Plaintiff of the appropriate employment position and title and pay through acts that were taken against Plaintiff because of her race, color, and sex, and opposing discrimination.

4.     These acts resulted in misrepresentation, misinformation, harassment, character assassination, negative impact regarding Plaintiff's employment title, position and salary, humiliation, embarrassment, depravation of job opportunities, permanent injury and harm and other results which continue to mount.

5.     Plaintiff alleges that the collective Defendants, directly acted and/or allowed its agents, employees, representatives and/or officers to act maliciously and unconstitutionally, enacting discriminatory policies, which caused Plaintiff to suffer the following injuries:

•     Violations of her various statutory rights, including those protected by Title VI and Title VII of the Civil Rights Act of 1964, Article 15 of the Executive Law of the State of New York (Human Rights Law) §§ 290 and 296.

•     Violations of her Constitutional rights under the Fourteenth Amendment to the United States Constitution (Fourteenth Amendment) in violation of 42 U.S.C. § 1983. All of these violations

caused:

- Loss of employment;
- Denial and challenge of right to unemployment benefits;
- Loss of income;
- Emotional distress;
- Loss of self worth;
- Humiliation;
- Embarrassment;
- Loss of quality of life:
- Loss of career;
- Loss of reputation;
- Loss of benefits, pay, future income and pension funds; and
- Retaliation.

6.      Said acts were done knowingly with the consent and condonation of CITY OF LONG

BEACH (hereinafter "CITY"), COMPTROLLER INNA RESNICK, in her individual and in her

official capacity, with the express purpose of targeting, injuring and silencing the Plaintiff, and

generally violating her rights as protected by law including the United States and New York State

Constitutions, and federal and state statutes, rules and regulations.

## JURISDICTION AND VENUE

7.      The jurisdiction of this Court is invoked under 28 U.S.C. §§1331 and 1343.

8.      The Court is requested to exercise pendant jurisdiction with respect to Plaintiff's State

law claims pursuant to 28 U.S.C.§ 1367.

9.      Venue in the Eastern District of New York is proper under 28 U.S.C. §1391, based

on the fact that Plaintiff resides in Nassau County, New York and the Defendants are conducting

business in the State of New York.

10.      On September 7, 2021 Respondent dual filed her Complaint with New York State

Division of Human Rights under case number 10213397, and the United States Equal Employment

3

Opportunity Commission under charge number 16G-2021-02745 charging the within Defendants with discrimination based upon Plaintiff's race, color and sex in violation of N.Y. Executive Law Article 15.

11.     On or about June 25, 2022, Plaintiff received a Notice of Right to Sue Within 90 Days, issued by the U.S. Department of Justice with regard to EEOC Charge No. 16G-2021-02745, which was postmarked June 21, 2022 (**Exhibit A**).  As of the filing of this complaint, ninety days from the date of receipt of the Notice of Right to Sue has not yet passed.

### PARTIES

12.     PLAINTIFF NATALIE WHITE (hereinafter "Ms. White" or "PLAINTIFF") is a natural person, who resides in the County of Nassau, State of New York, at all times relevant herein is a citizen of the United States.

13.     DEFENDANT CITY OF LONG BEACH (hereinafter "Defendant CITY" or "CITY") is and was a duly constituted municipal corporation of the State of New York, and is and was the employer of the Inna Resnick at the times relevant to this complaint.

14.     DEFENDANT INA RESNICK (hereinafter "Defendant Resnick" or "Resnick") was at the times relevant to this Complaint, employed by CITY as the Comptroller. Defendant Resnick, at the times relevant to this Complaint, worked specifically out of Long Beach City Hall located at 1 W Chester St, Long Beach, NY 11561.

15.     DEFENDANT DONNA GRAYDEN (hereinafter "Defendant Grayden" or "Grayden") was at the times relevant to his Complaint, employed by CITY as the City Manager. Defendant Grayden was the Chief Executive Officer of Defendant CITY and is policy creator and decision maker for Defendant CITY. Ms. Grayden worked specifically out of Long Beach City Hall

located at 1 W Chester St, Long Beach, NY 11561.

## FACTS

16.      Plaintiff, Natalie White, is an African American woman who was formerly employed by Respondent CITY OF LONG BEACH.

17.      Ms. White filed a verbal complaint with her employer to voice and attempt to remedy the wrongful and discriminatory treatment to which she had been subjected on or about March of 2020.

18.      Ms. White was hired by Respondent CITY OF LONG BEACH on October 30, 2014 as Administrative Clerk.   Ms. White passed   four (4) civil service exams including: the Administrative Clerk exam where she scored  95 out of 100; the License Clerk exam where she scored 90 out of 100; the Account Clerk exam where she scored 100; and the Purchasing Clerk exam, where Ms. White scored in the top three but her score was wrongfully disqualified and withheld.    "Appointment are to be made in accordance with the "Rule of Three" as set forth pursuant to Nassau County Civil Service Commission Rule XVI and New York State Civil Service Law Section 61. This "rule" sets forth that appointment to a position shall be made by selecting the candidate whose final rating in the examination is equal to or higher than the rating of the third highest ranking individual on the list that was willing to accept appointment. According to New York State Civil Service Law Section 61, the Rule of Three is used to select candidates. Selection must be made from among the three highest standing candidates on the eligible list willing to accept appointment."[1]

---

[1]www.nassaucountyny.gov/DocumentCenter/View/35778/Review-of-Hiring-Practices-and-Related-Parties--Nassau-County--Civil-Service-Commission

19.    On August 3, 2018, after passing the May 12, 2018 Purchasing Clerk exam, Ms. White was informed by Sarah Flammer, the Chairwoman of Long Beach Civil Service Commission and Robin Lynch, both the Civil Service Secretary and EEOC Officer, who are both Caucasian, that her passing exam grade was being disqualified.

20.    This disqualification occurred despite the fact that Plaintiff's name appeared on the eligible list made created by the Civil Service Commission on July 31, 2018.

21.    When Ms. White was administered the Purchasing Clerk exam, Ms. White already possessed the minimum qualifications of three years clerical experience necessary for the position of Purchasing Clerk.

22.    Also, at that time, the four (4) years Ms. White worked in the Comptroller's Office, far surpassed the six (6) month purchase experience required to take the Purchasing exam. Therefore, Ms. White was eligible to both take the exam because she fulfilled the requisite requirements and was eligible to be promoted to the Purchasing Clerk position after passing the exam.

23.    The representatives of the Civil Service Commission erroneously stated that Ms. White did not met the minimum qualifications for taking the exam and Ms. White subsequently filed an appeal. Her appeal was wrongfully denied. Even though Ms. White was eligible to take the exam and attain the Purchasing Clerk position, she was wrongfully disqualified to deny her a position in which she was entitled.

24.    In comparison, Antonella Capalbi, a Caucasian woman, who not only lacked purchasing experience but also scored 70 out of 100 on the Purchasing Clerk exam was given the promotion to Purchasing Clerk. Rather than receiving the Purchasing Clerk position Ms. White

earned, Sarah Flammer and Robin Lynch selected a less qualified Caucasian woman for no other reason other than discriminatory employment practices based on race, color, and/or ethnicity.

25.    Despite the fact that she did exemplary work and took on additional responsibilities, Ms. White was wrongfully passed over for the Purchasing Clerk position due to her race and color. Ms. White successfully managed aspects of the budget for Defendant CITY, which included the responsibility of paying the bills on behalf of Defendant CITY.

26.    No matter how well she performed the tasks Ms. assigned, she could not overcome the discriminatory employment practices of Defendant CITY when it came to her treatment as opposed to her Caucasian colleagues and how they were treated.

27.    In March of 2020, in accordance with Governor Cuomo's Executive Order 202-202.8, non-essential businesses were to close and non-essential workers were to remain home. Long Beach City Hall, where Ms. White worked was closed except for employees labeled essential staff.

28.    Defendant COMPTROLLER INNA RESNICK (hereinafter "Resnick"), who is Caucasian, allowed her Caucasian colleagues Tommy Larson, who was the payroll supervisor, and Erin D'Antonio, the Deputy Comptroller at that time, to work from home. Defendant Resnick also allowed Danielle Ford, who is Caucasian, did not have seniority over Plaintiff and publicly refused to work in person during the pandemic, to work and get paid from the comfort, safety and security of her home.

29.    Defendant Resnick was well aware of Plaintiff's severe asthmatic condition. Despite Plaintiff's seniority and Defendant CITY's knowledge of Plaintiff's severe asthma, which made her more susceptible to serious illness or death from the COVID-19 virus, Ms. White was mandated to come in to work.

30.     Ms. White was declared an essential worker by Defendants and forced to put her life on the line by working in person at City Hall during this global pandemic, even though Ms. White, like her white colleagues, could have completed her work from home.

31.     Ms. White was deeply concerned for her health and terrified that she was putting her life at risk while her white co-workers, such as Tommy Larson, Erin D'Antonio, and Danielle Ford, were allowed to work from the comfort, safety, and security of their own home.

32.     Ms. White expressed her fear of working inside City Hall during the COVID-19 pandemic to Defendants Resnick and Grayden. Defendant Grayden informed her that the decision for her to work in City Hall during the pandemic was at the sole discretion of Defendant Resnick.

33.     Following this complaint by Plaintiff, Defendant Grayden was under the obligation, on behalf of Defendant CITY, to investigate, respond to the complaints of Ms. White regarding discriminatory treatment. Defendant Grayden failed to take any action to address or stop the wrongful and discriminatory actions veing taken against Plaintiff. Instead she ignored Plaintiff's complaints and condoned the unlawful and discriminatory treatment to which Ms. White was being subjected.

34.     Defendant CITY disregarded all of Plaintiff's concerns and safety, while honoring the concerns and safety of her white co-workers. Upon information and belief, neither Tommy Larson, Erin D'Antonio, nor Danielle Ford had severe COVID-19 preconditions, furthering Defendant CITY's preferential and discriminatory treatment of its employees solely based upon race.

35.     In addition, Defendant Resnick promised that in accordance with Governor Cuomo's Executive Order, those who were labeled as essential workers were to be given Personal Protection Equipment (PPE) such as gloves and masks as protection against exposure to COVID-19. However,

less than one hour (1) hour before Ms. White was forced to work inside City Hall, and despite knowing her condition, Defendant Resnick informed Plaintiff that she would not receive gloves nor masks.

36.     Plaintiff once again informed Defendant Resnick that she could successfully complete her work from home, but unlike her Caucasian colleagues, Ms. White was commanded to report to City Hall in person.  Ms. White was not in possession of a mask and had to wear a bandana to protect herself.

37.     Thereafter, Ms. White was never given any supplies, and had to buy her own masks, gloves and other materials in order to protect herself from exposure to the deadly COVID virus.

38.     After filing Complaints about her treatment, on April 20, 2020, Ms. White received a letter from Defendant CITY. Despite her stellar work performance, outstanding test scores, years of seniority, sacrifice, and being forced to brave the risks of life and death during this pandemic, she was going to be terminated on May 21, 2020. When Ms. White received her notice of termination, Ms. White was one (1) of only three (3) African Americans employed in any capacity at City Hall and Ms. White was the only African American person in an Executive position at City Hall.

39.     Despite her five (5) plus years working in the Comptroller's Office at City Hall and scoring 100 on the Accounting Clerk exam, Ms. White was terminated.  Contrary to past practices, Defendant CITY did not take her seniority or stellar exam scores into account at all, they simply continued their discriminatory and retaliatory practices by terminating her.

40.     Plaintiff's experience and test scores should have earned her "bumping rights" in the Accounting Clerk position rather than being terminated.  Bumping rights is a union practice where whenever employees are to be terminated, the terminations are based upon seniority, essentially a

last hired, first fired basis.

41.     However, Defendant  CITY's decision to terminate her was based on her race, color and/or ethnicity and prior complaints of differential treatment.

42.     This retaliatory act was an utter shock to her because in her experience union workers are moved or transferred to other departments, rather than going from being labeled an essential worker to being terminated.

43.     Defendant CITY disregarded multiple known past practices to target and terminate her based solely upon her race and in retaliation for speaking up against their discriminatory practices.

44.     Further examples of CITY OF LONG BEACH's discriminatory employment practices and differential treatment against Plaintiff include the treatment of  her Caucasian counterparts Patrick Larson, an Administrative Aide and Rita Butler, an Office Aide, who were each spared termination even though their positions were lower than her Administrative Clerk position.

45.     Rita Butler was originally a bookkeeper who failed two civil service exams and received a demotion to Office Aide.  Ms. Butler was never terminated.

46.     Ms. White did not receive the same treatment as her Caucasian counterparts. Neither her work performance, position, or seniority was taken into account when Defendants made their discriminatory and retaliatory decision to terminate her.  Their decision was based solely on her race, color and ethnicity and the fact that I spoke up against their discriminatory employment practices.

47.     Since her termination on May 21, 2020, her Caucasian colleagues, Robert Rykowski, Allen Horowitz, and  Julie Half on were all restored to their respective positions after they were terminated.  Notwithstanding her excellent work performance, test scores, and seniority, Ms. White

was not been restored to her position of Administrative Clerk and continue to be treated differently than her Caucasian counterparts.

48.     Since her wrongful termination, Ms. White have engaged in several communications with the CSEA Union President, John Mooney, who himself agreed that the actions of Defendant CITY against her are discriminatory in nature and that "shady things have gone on in Civil Service." Mr. Mooney claims that he speaks on her behalf, but Defendant CITY has refused to listen to him. Rather than acknowledge their clear acts of discrimination and retaliation, Defendants have doubled down on their wrongful actions.

49.     John Mooney offered to give her a job in the Recreation Center where instead of working in the Comptroller's Office, vaguely explained that Ms. White would work in a gymnasium supervising the Recreation Center and maintaining the sports equipment.

50.     No rate of pay, no job description and no explanation of terms of this position were ever provided by Mooney or Defendants to Ms. White. Mr. Mooney's offer was vague, never provided in writing and from what was said, was clearly well below her qualifications and experience.

51.     During the times of these communications between Plaintiff and Mr. Mooney, Plaintiff has already been wrongfully terminated and Mr. Mooney is her only connection to Defendants in attempting to get her job back.

52.     Ms. White was discriminated against and then wrongfully terminated from her Executive position of Administrative Clerk in the Comptroller's Office.  Based on her service and qualifications, Ms. White deserved to be treated as her Caucasian colleagues Robert Rykowski, Allen Horowitz,  Mindy Abrams, and Julie Halfon were treated.  Ms. White deserved to be restored to her

previous position of Administrative Clerk or a comparable position in the office where she worked.

53.     Furthermore, James (Jake) Jacobi, another one of her Caucasian colleagues was restored to a comparable position from Animal Control officer to Sanitation inspector, a position that was previously abolished. While Ms. White, the African American woman, was not even offered a comparable position to the one from which Ms. White was removed.

54.     Ms. White was discriminated against during her employment when Ms. White was denied promotions in favor of less qualified Caucasian coworkers such as Antonella Capalbi. Ms. White was discriminated against during the COVID-19 pandemic by being forced to work at City Hall in person, despite her medical conditions which existed, while her Caucasian co-workers were allowed to work from the comfort, safety, and security of their own homes. Ms. White made complaints about this treatment to Defendants. Plaintiff was not afforded PPE and subjected to intolerable conditions her white co-workers were not required to endure.

55.     Ms. White was discriminated against by being offered a job position well below her qualifications in contrast to her Caucasian co-workers who were discharged and restored to equal positions.   This shows that the discrimination and retaliation continued even after she was wrongfully terminated.

56.     Her seniority and prodigious work performance gives Defendant CITY provided no justification for terminating her or offering to place her in a  position so far removed from her previous position.  All of these actions were committed and continue to be committed by Defendant CITY solely based upon her race, color and/or ethnicity.  Ms. White continue to be discriminated and retaliated against.  Ms. White continues to endure the life altering consequences of Defendant CITY's discriminatory and retaliatory employment practices.

57.     On May 31, 2020, Ms. White was informed that due to her termination, her employee based medical coverage would be discontinued on June 1, 2020.  Ms. White was compelled to pay more than $1,600 each month for continued medical coverage.   Because of this wrongful termination, Ms. White cannot afford to pay for her medical coverage and has been seriously impacted with regard to her mental health, quality of life and financial stability.

58.     Prior to her retaliatory termination, Ms. White received dental work covered by her employee insurance.  Because her termination was so abrupt, her necessary dental work was not complete before Ms. White's insurance coverage was taken.  Beginning August 1, 2020, in order to receive the dental coverage she required, Ms. White needed to make a $400 payment and pay $144.00 in monthly fees, which increased to $157.00 in monthly fees in May of 2021. This has further increased to 168.00 per month. Ms. White's COBRA benefits are set to expire in 2023.

59.     On or about July 13, 2021, Ms. White was informed that her pension membership was terminated and will remain terminated unless Ms. White am restored as a public employee of New York State.  To date, Ms. White has contributed more than $12,000.00 into her pension and was less than three years away from her pension fully vesting.

60.     The racially discriminatory employment practices of Defendant CITY have not only caused her difficulties presently but are destroying her future economic viability.

61.     Ms. White has never received any complaints from Defendant CITY regarding her work efforts, ethics, or proficiency.  Ms. White passed all of her exams and excelled as an Administrative Clerk.  However, Ms. White no longer have a job with Defendant CITY solely because Plaintiff is an African American woman who dared to speak out against racially discriminatory employment practices and was then retaliated against by being terminated and, denied

the restoration to employment her white former co-workers have been provided.

62.    Ms. White should never have been terminated, retaliated against, and/or continually discriminated against  for voicing her disagreements with Defendant CITY for denying her earned exam certifications.

63.    Ms. White should never have been terminated, retaliated against, and/or continually discriminated against  for  disagreeing with where and how Ms. White, as a Black woman with medical conditions, should work during this global pandemic, particularly with these severe pre-conditions.

64.    Despite all of her accomplishments, Defendant CITY has displayed discriminatory employment practices against her throughout her entire tenure, including discriminatory exam disqualifications, denying her advancement in employment opportunities and Defendant Resnick's differential treatment in favor of her white co-workers during the COVID-19 pandemic.

65.    Additionally, following her termination, Defendant CITY continued to discriminate against her and engage in the preferential treatment of Caucasian people by fully restoring Caucasians to their full jobs, including less senior Caucasian workers, to their previous job titles, while denying Plaintiff the same benefit.  Such discriminatory and retaliatory employment practices led to the abrupt end of her employee salary, medical coverage, dental coverage, and ultimately the erosion of her retirement benefits.

66.    Since being wrongfully terminated, Ms. White has struggled to maintain adequate health care, which has added to her emotional, mental and financial stress. Ms. White does not have any stable medical care to control her blood pressure, she suffers debilitating migraines , and lacks medication to help with her insomnia and ability to sleep. None of this would have been a problem

if Ms. White was not wrongfully terminated.

67.     Due to her wrongful termination and lack of a steady income, Ms. White has cannot make necessary repairs to her home and has sunken into deep debt, which is caused by the violative acts of Defendants.

68.     In an attempt to deal ands cope with the insomnia, anxiety, and depression of being discriminated and/retaliated against by Defendants, Ms. White sought therapy. However, the emotional and mental stress is constant, ever-present and has significantly altered the course of Ms. White's life. Defendants CITY and Inna Resnick should not be allowed to discriminate and destroy Ms. White's life without any repercussions and she should be restored to full employment.

## AS AND FOR A FIRST COUNT
### TITLE VII, CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000e

69.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 68 inclusive of this Complaint, with the same force and effect as though fully set forth herein.

70.     Defendant CITY,  through their agents and employees, discriminated against the Plaintiff in his employment based on Plaintiff's race, color, and gender and retaliated against her for opposing discrimination,  in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

71.     Plaintiff is and continues to be qualified for each and every position she has held and sought to be promoted into. She as been the victim of discrimination based on her race and color as the only African American Executive in City Hall.

72.     Plaintiff had more than five (5) years experience in the Comptrollers office and scored a perfect 100 on the Accounting Clerk exam. However, after previously being denied advancement,

she was now denied the ability to keep her position with CITY and Caucasian persons with lesser qualifications were afforded the ability to maintain and/or return to their jobs.

73.     The fact of repeatedly being denied promotions, being forced to come into CITY Hall ans work during the height of the pandemic, before being terminated and not brought back to work while others who are white, including Tommy Larson, Erin D'Antonio, and Danielle Ford do not suffer through this type of ordeal, is humiliating and embarrassing when the entire City Hall is aware that Ms. White is the better performing employee and has a greater seniority, but has not been selected for promotion or retention because she is African American and not Caucasian.

74.     Plaintiff has been subjected to differential treatment based on her race and color and has been the victim of retaliation for her opposition to discrimination and wrongful treatment of herself and other persons of color, including but not limited to African American persons.

75.     As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of employment and loss of income. Plaintiff suffered loss of other employment benefits and continues to suffer anxiety, distress, humiliation, embarrassment as a result of the differential and discriminatory treatment and hostile work environment.

76.     As a direct result of aforementioned acts, Plaintiff has been deprived of her rights, deprived of her freedoms, and been physically and mentally harmed. Plaintiff has been forced to seek redress in the courts as a result of the previously mentioned abuse, ridicule, and discrimination.

77.     Plaintiff has been subjected to humiliation, ignominy, loss of title/status, untimely removal from her position, and removal from her career. As a result, Plaintiff has experienced a severe diminution in her quality of life.

78.     Plaintiff was refused status, transfer, benefits, resources and trust awarded to other

employees who were similarly situated, excepting the fact that they are not Black or Brown. Were Plaintiff a white person, rather than an African American woman, she would not have been subjected to the adverse employment actions, denial of promotions, denials of transfer, denial of employment, falsely advised that she had no basis to complain, and retaliated against and subjected to the intense abuse and humiliation that continues.

79.    Plaintiff has incurred incidental fees/damages, loss of pay, loss of benefits, and other damages/ injuries due to CITY's unlawful discrimination.

80.    Further, once Plaintiff protested such unequal and unlawful treatment, Defendant CITY through their agents, employees and servants, retaliated against her by denying her advancement and promotions and retaining less qualified Caucasian persons over her, subjecting Plaintiff to more and greater financial and emotional harm.

81.    As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of employment, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of longevity, loss of status, loss of opportunities, distress, humiliation, embarrassment, emotional trauma, and damage to her reputation as alleged in the preceding paragraphs of the within Complaint.

82.    That by reason of the foregoing, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and has been subjected to economic losses and emotional injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of three million ($3,000,000.00) dollars, as well as costs and attorney's fees.

## AS AND FOR A SECOND COUNT
### 42 U.S.C. § 2000(d) (Title VI)

83.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 82 inclusive of this *Complaint*, with the same force and effect as though herein fully set forth herein.

84.    Defendant CITY through its agents and employees, discriminated against Plaintiff based on race, color and gender while receiving federal assistance which violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d) et seq.

85.     Defendant CITY, through their agents and employees, discriminated against the Plaintiff in her employment based on Plaintiff's race, color, gender and retaliated against her for opposing discrimination.  In violation of her rights, Plaintiff was excluded from nondiscriminatory employment in CITY.   Plaintiff was denied obtaining and maintaining her position in her employment and denied the ability to return to her position and receiving the additional pay, options, opportunities and benefits she would have earned during her employment in those positions, and was personally discriminated against and retaliated against by Defendant CITY through their agents and employees  based on her race and color.

86.    Defendant CITY and its members created a hostile work environment against Plaintiff through intentional acts of discrimination and retaliation. The hostile work environment caused Plaintiff to suffer abuse, harassment, embarrassment, and suffering based on her race, color and gender. Other white employees were not subject to the hostile work environment to which the Plaintiff was subjected, instead they were provided security, promotions and transfers which allowed them to maintain and advance themselves and their careers.

87.    As a direct result of said Defendants' acts, Plaintiff has suffered and continues to suffer loss of status, loss of opportunities, loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer anxiety, distress, humiliation, embarrassment, great financial expense and damage to her reputation. As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of three million ($3,000,000) dollars as well as costs and attorney's fees.

## AS AND FOR THE THIRD COUNT
### 42 U.S.C. §1983 - FOURTEENTH AMENDMENT

88.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 87 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

89.    The Defendant Resnick has engaged in actions and abuses which violate and deny Plaintiff her rights as provided under the Fourteenth Amendment of the United States Constitution, violating her Fourteenth Amendment rights of equal protection and substantive due process in discriminating against Plaintiff because of and on account of, her race, color and gender.

90.    Resnick's infringement upon and violation of Plaintiff's rights protected under the Fourteenth Amendment of the United States Constitution was and is intended to place a chilling effect upon the exercise of such rights by Plaintiff and other persons as is their right as provided by the U.S. Constitution and exercise such rights.

91.    Plaintiff, a Black woman, has been treated differently from similarly situated White employees of CITY and has been abused and violated because of her race, color and gender.

92.    Resnick's acts have caused the Plaintiff to suffer and has resulted in diminishing her employment, loss of promotion, and the ability to advancement in his employment.

93.    Resnick knew that she was discriminating against and violating Plaintiff's rights discriminating against her because of her race, color, and gender.  In so acting, Defendant CITY through their agents and employees, took actions in violation of Plaintiff's rights which they knew or should have known were within and outside the scope of their authority.

94.    Defendant Grayden condoned and took no action to correct Defendant Resnick's actions.

95.    Resnick took no action to prevent the wrongful actions taken against Plaintiff to discriminate against her and cause her employment to be wrongfully diminished.

96.    Defendant CITY acquiesced and contributed to the continuation of the acts of Resnick to violate Plaintiff's rights in failing to take action as to prevent and expose the discriminatory and violative actions being taken against Plaintiff.

97.    The Defendant CITY condoned the wrongful, discriminatory, reckless, careless and intentional acts taken as set out herein and each had an affirmative responsibility to prevent, expose and reverse said wrongful, discriminatory, reckless, careless and intentional acts but instead joined in this conspiracy against Plaintiff because of her race, color and gender.

98.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits, and has suffered and continues to suffer distress, anxiety, humiliation, great expense, embarrassment, and damage to her reputation.

99.    As a result of Defendants' acts, Plaintiff suffered and is entitled to, damages sustained to date and continuing in excess of three million dollars ($3,000,000.00), as well as punitive damages, costs and attorney 's fees.

## AS AND FOR A FOURTH COUNT
## 42 U.S.C. §1983 - MUNICIPAL VIOLATIONS

100.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 99 inclusive, of this Complaint, with the same force and effect as though herein fully set forth.

101.    Defendant CITY's Office through its employees, agents, assigns, servants and in particular Resnick and Grayden acting under color of law, and through their employees servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, in abusing the rights and discriminating against persons situated as Plaintiff is.

102.    These actions have risen to the level of a pattern, practice, custom and/or usage which has deprived Plaintiff of rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. §1983 to her as a Black woman.  These actions were condoned, adopted and fostered by policy makers of Defendants office.

103.    As a direct and proximate result of said acts, Plaintiff suffered and continues to suffer diminished employment, loss of income, loss of advancement in her career, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damages to his reputation.

104.    As a result of Defendants' acts, Plaintiff suffered, and is entitled to, damages sustained to date and continuing in excess of three million dollars ($3,000,000.00), costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

## AS AND FOR A FIFTH COUNT
## THE AMERICANS WITH DISABILITIES ACT, *AS AMENDED* (HEREIN "THE ADA")§ 42 U.S.C. 12112, THE REHABILITATION ACT OF 1973 ("RCA")  29 U.S.C. § 794, § SECTION 504 OF THE REHABILITATION ACT, AND SECTION 1557 OF THE AFFORDABLE CARE ACT

105.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 104 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

106.    Ms. White made clear that he had a condition that made her more prone to serious sickness due to potential COVID infections. This plea by Plaintiff was ignored and instead her request to work from home like her white counterparts was denied.

107.    Ms. White has extensively set forth:

(a) that she was seeking an accommodation and be able to work from home which would placed her on par with her whit co-workers and was consistent with the standard being established by New York State[2];

(b) that she was not offered any alternatives to her requested accommodations; and

(c) that similarly situated City Hall employees were not subjected to this treatment by Defendants; and

(d)Defendants'' departure from their own admitted internal procedures is especially significant, as "[d]epartures from procedural regularity [. . .] can raise a question as to the good faith of the process," and thus give rise to a plausible inference of discriminatory intent.

108.    Defendant was informed of Plaintiff's disability and shortly after being informed of this, Defendant terminated Plaintiff after 7 years of employment of more than satisfactory

_____

[2]*See* Dept. of Health and Human Services, *Guidance on "Long COVID" as a Disability Under the ADA, Section 504, and Section 1557*, July 26, 2021. https://www.hhs.gov/civil-rights/for-providers/civil-rights-covid19/guidance-long-covid-disability/index.html

employment.

109.    Defendant's practice of discriminating against Plaintiff based on disability status is a violation of the Americans With Disabilities Act.

110.    As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of three million dollars ($3,000,000.00) as well as punitive damages, costs and attorney's fees.

## AS AND FOR A SIXTH COUNT
## NYS EXECUTIVE LAW §296

111.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 110 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

112.    The above discriminatory pattern and practice based on race, color, and gender by Defendant CITY's Office, their agents, and employees violates New York State.

113.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of status within her employment, suffer diminished employment, loss of income, loss of employment benefits in her career and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to her reputation.

114.    Because of Plaintiff's race, color, and gender she has been subjected to abuse and mistreatment as detailed above and has been treated differently than White individuals in that Plaintiff has been treated as stated herein because of her race, color, gender and disability.

115.    As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of three million dollars ($3,000,000.00) as well as punitive damages, costs and attorney's fees.

**RELIEF**

**WHEREFORE**, PLAINTIFF demands judgment against DEFENDANTS:

a.    On the First Cause of Action in the sum of three million ($3,000,000.00) dollars.

b.    On the Second Cause of Action in the sum of three million ($3,000,000.00) dollars.

c.    On the Third Cause of Action in the sum of three million ($3,000,000.00) dollars.

d.    On the Fourth Cause of Action in the sum of three million ($3,000,000.00) dollars.

e.    On the Fifth Cause of Action in the sum of three million ($3,000,000.00) dollars.

f.    On the Sixth Cause of Action in the sum of three million ($3,000,000.00) dollars.

g.    Punitive damages as to the individual defendants in the amount of twenty million ($20,000,000.00) dollars.

h.    Injunctive relief, requiring Defendants to correct all past violations of federal law as alleged herein; to enjoin Defendants from continuing to violate federal law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal laws;

i.    An order granting such other legal and equitable relief as the court deems just and proper.

j.    Award costs of this action including attorney's fees to the PLAINTIFF pursuant to 42 U.S.C. § 1988 and any and all applicable attorney's fees and costs as imposed by state-law.

**A JURY TRIAL IS DEMANDED**

Dated: Hempstead, New York
        September 20, 2022                        Respectfully Submitted,

                                                LAW OFFICES OF
                                                FREDERICK K. BREWINGTON

                                By:    *Frederick K. Brewington*

                                                FREDERICK K. BREWINGTON
                                                556 Peninsula Boulevard
                                                Hempstead, New York 11550
                                                (516) 489-6959

24

# EXHIBIT A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall St. 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 06/17/2022

**To:** Natalie White
82 East Market Street
Long Beach, NY 11561

Charge No: 16G-2021-02745

EEOC Representative and email:    Holly Shabazz
S/L Program Manager
HOLLY.SHABAZZ@EEOC.GOV

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Judy Keenan
06/17/2022

Judy Keenan
District Director

NEW YORK NY 100
21 JUN 2022  PM 7  L

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300