UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

NATALIE WHITE,

                       Plaintiff,

       -against-

CITY OF LONG BEACH, COMPTROLLER INNA
RESNICK (in her official and personal capacity),
CITY MANAGER DONNA GRAYDEN (in her
official and personal capacity),

                       Defendants.
------------------------------------------------------------------X

**FILED**
**CLERK**

1:21 pm, Feb 20, 2024

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM OF DECISION & ORDER**
CV 22-5628 (GRB)(ARL)

**GARY R. BROWN, United States District Judge:**

In this employment discrimination and retaliation action, defendants City of Long Beach, Comptroller Inna Resnick, and City Manager Donna Grayden move to dismiss the second amended complaint. For the reasons discussed below, that motion is GRANTED.

***Background***

*Factual Allegations*

The following allegations are taken from plaintiff's second amended complaint, Docket Entry ("DE") 15 ("SAC"), and are presumed to be true for the purpose of the present motion. *See Agostisi v. Bendo*, No. CV-21-7182 (GRB)(LGD), 2023 WL 5334396, at *1 (E.D.N.Y. Aug. 18, 2023). Plaintiff is an African American woman formerly employed as an Administrative Clerk with defendant City of Long Beach. SAC ¶ 16. While employed, plaintiff sought a promotion to Purchasing Clerk and took the civil service exam for the position. *Id.* ¶ 18. Though plaintiff passed the exam, scoring in the top three of candidates,[1] she was informed that her score was

---

[1] Plaintiff alleges that according to state and local rules, selection for the position must be made from among the three highest scorers of the exam who are willing to accept. SAC ¶ 18.

1

disqualified because she failed to meet the minimum requirements to sit for the exam. *Id.* ¶¶ 19-23. Despite maintaining her eligibility to take the exam, she was denied the position of Purchasing Clerk. *Id.* ¶ 23. Instead, Antonella Capalbi, a Caucasian woman, was given the promotion to Purchasing Clerk, though allegedly being less experienced and less qualified than plaintiff. *Id.* ¶ 24.

Two years later, in response to the COVID-19 pandemic, then-Governor Andrew Cuomo issued Executive Order 202-202.8 that directed all non-essential businesses to close and all non-essential workers to remain at home. *Id.* ¶ 27. As such, plaintiff's workplace, City Hall, was closed except for certain employees who were determined to be "essential staff." *Id.* Whether an employee was deemed essential came at the "sole discretion of Defendant [Comptroller Inna] Resnick." *Id.* ¶ 32. Plaintiff, who defendants allegedly knew suffered from "severe asthma," was deemed essential and required to work in person. *Id.* ¶¶ 27-30. Some of her Caucasian colleagues, however, were permitted to work from home. *Id.*

Plaintiff expressed her concerns of working in person to defendants Resnick and Grayden. *Id.* ¶ 32. But the defendants took no action. *Id.* ¶ 33. Instead, defendant Resnick promised that in accordance with the Executive Order, plaintiff would be issued personal protective equipment (PPE) such as gloves and masks to aide in protection against exposure to COVID-19. *Id.* ¶ 35. But less than one hour before plaintiff began her shift, defendant Resnick informed plaintiff that no PPE was to be provided. *Id.* Plaintiff repeated her contention to defendants that she could successfully complete her work from home. *Id.* ¶ 36. Nevertheless, plaintiff was directed to report to work in person. *Id.* And due to defendants' failure to provide her with necessary PPE, plaintiff had to purchase her own masks, gloves, and materials to protect herself from exposure to COVID-19. *Id.* ¶ 37.

Soon after, plaintiff filed complaints regarding the treatment she received. *Id.* ¶ 38. In response to those complaints, defendant City of Long Beach sent plaintiff a notice of termination letter on April 20, 2020, informing her that she was going to be terminated on May 21, 2020.[2] *Id.* At the time, plaintiff was only one of three African American employees at City Hall and the only African American in an Executive position. *Id.* Furthermore, while other Caucasian employees were similarly terminated, each was restored to their respective positions. *Id.* ¶ 47. Plaintiff, however, was not. *Id.* Though plaintiff's former position as Administrative Clerk was not in the City's 2021 budget, plaintiff complains that the woman who filled the position in the interim had less seniority than plaintiff.[3] *Id.* ¶ 57. Plaintiff was not rehired by the City. *Id.* ¶ 47

*Procedural History*

Plaintiff commenced this action against defendants on September 20, 2022, alleging: (1) discrimination and retaliation under Title VII; (2) discrimination and retaliation under Title VI; (3) violation of the Equal Protection Clause of the Fourteenth Amendment; (4) municipal liability under 42 U.S.C § 1983; (5) violation of the Americans with Disabilities Act; and (6) violation of New York State Executive Law § 296. *See generally* DE 1. Plaintiff then amended her complaint twice. *See* DE 12 (first amended complaint); DE 15 (second amended complaint). As a result, only plaintiff's Title VII, Title VI, Equal Protection, and municipal liability claims remained. *See generally* DE 15. On August 8, 2023, this Court held a pre-motion conference to hear defendants' anticipated motion to dismiss at which the Court dismissed plaintiff's Title VII claims and directed the parties to fully brief the motion as to the remaining claims.[4] *See* DE 18.

---

[2] Plaintiff alleges that she was entitled to "bumping rights," which is a union practice where employee terminations are based on seniority, and that based on her experience and test scores, she should not have been terminated. SAC ¶¶ 40-42.
[3] Plaintiff does not make any allegations as to this individual's race, color, or ethnicity.
[4] Plaintiff has agreed to voluntarily withdraw the claims against the individual defendants in their official capacities. DE 23-5 at 6.

This opinion follows.

***Discussion***

*Standard of Review*

Motions to dismiss are decided under the well-established standard of review for such matters, as discussed in *Burris v. Nassau County District Attorney*, No. 14-5540 (JFB)(GRB), 2017 WL 9485714, at *3-4 (E.D.N.Y. Jan. 12, 2017), *adopted by* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017), and incorporated by reference herein. The gravamen of that standard, of course, is the question of whether, assuming the allegations of the complaint to be true solely for the purposes of the motion, the complaint sets forth factual material to render the claims plausible. *See id.*

*Title VI Claims*

Defendants argue that the Title VI claims should be dismissed principally because the City is ineligible to receive funds under the Paycheck Protection Program (PPP) and thus, has not received federal funds where a primary objective is to provide employment. To sufficiently plead a Title VI claim, a plaintiff must allege (1) participation in a protected activity known to the defendants, (2) adverse action by the defendants against the plaintiff, and (3) a causal connection between the plaintiff's protected activity and defendants' adverse action. *Bloomberg v. New York City Dep't of Educ.*, No. 17-CV-3136 (PGG), 2023 WL 1927825, at *4 (S.D.N.Y. Feb. 10, 2023) (citations omitted). Additionally, in the employment discrimination context, courts have construed Title VI claims to "require[] a logical nexus between the use of federal funds and the practice toward which [the] action is directed." *Johnson v. Cty. of Nassau*, 411 F. Supp. 2d 171, 175 (E.D.N.Y. 2006) (quoting *Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981)). Thus, there is a threshold requirement that the employer be the recipient of funds aimed primarily at providing employment. *Dobroff v. Hempstead Union Free*

4

*Sch. Dist.*, No. 21-CV-1567 (JMA)(ST), 2022 WL 4641128, at *5 (E.D.N.Y. Sept. 30, 2022) (citing 42 U.S.C. § 2000d-3).

Here, plaintiff cites to several sources of federal funding that the City receives but only one is of critical importance: an alleged $3.67 million PPP loan under the CARES Act—which indisputably has the primary objective of providing employment. *See* SAC ¶ 94. While seemingly sufficient on its face, a closer review of the relevant statutes suggests otherwise.[5]

In March 2020, Congress enacted the CARES Act in response to the COVID-19 pandemic to, *inter alia*, "alleviate the pandemic's substantial economic effects on small businesses." *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 409 (2d Cir. 2022) (citing Coronavirus Aid, Relief, and Economic Security Act, Pub L. No. 116-136, 134 Stat. 281, 286 (2020)) (discussing statutory and regulatory background of the CARES Act and PPP program). "Section 1102 of the Act establishes the PPP, a temporary program targeted at providing *small businesses* with the funds necessary to meet their payroll and operating expenses." *Id.* (citing CARES Act § 1102, 134 Stat. at 286 (codified as amended at 15 U.S.C. § 636(a)(36))) (emphasis added). The statute explicitly provides for who may qualify for funding under the PPP. *See* 15 U.S.C. § 636(a)(36)(D). Among those eligible are small businesses, independent contractors, news organizations, nonprofits, and others. *See id.*

As relevant here, however, defendant City of Long Beach—as a *municipality*—appears to fall outside the category of eligible recipients of PPP funding. *Id.* Indeed, this is the position taken by defendants, who call the allegation a "legal impossibility." *See, e.g.*, DE 23-6 at 5. In response,

---

[5] The Court may take judicial notice of such matters at the motion to dismiss stage. *Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes.")).

5

plaintiff ultimately fails to address this statutory impediment.⁶  Rather, plaintiff relies on a California district court case interpreting Title IX claims for the proposition that a defendant who receives PPP funding may face a Title IV claim.  DE 23-5 at 15 (citing *E.H. by & through Herrera v. Valley Christian Acad.*, 616 F. Supp. 3d 1040 (C.D. Cal. 2022)).  But plaintiff misses the mark.  In *E.H.*, the defendant, a private school, not only conceded that it had received a PPP loan but was apparently eligible for such funding under the statute.  *Compare* 15 U.S.C. § 636(a)(36)(D) (providing eligibility for certain tax-exempt organizations), *with E.H.*, 616 F.Supp.3d at 1049–50 (describing defendant's "tax-exempt status").  Whereas here, defendant City not only disputes receiving PPP funding but appears statutorily barred from even receiving it.  While there can be no question that defendant City recieves federal aid, whether such aid has been sufficiently linked to providing employment has yet to be shown.  Accordingly, plaintiff's Title VI claim is DISMISSED without prejudice.

*Equal Protection Claim*

Defendants seek dismissal of plaintiff's Equal Protection claim on the basis that she failed to sufficiently allege she was treated differently than similarly situated employees.  "The Fourteenth Amendment, as made actionable by 42 U.S.C. § 1983, provides public employees with the right to be free from discrimination."  *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (internal quotation marks omitted)).  "At the pleadings stage of an employment discrimination case, a plaintiff has a '*minimal* burden' of alleging facts 'suggesting an inference of discriminatory motivation.'"  *Vega*, 801 F.3d at 85 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 308 (2d Cir. 2015)).  But the facts alleged must provide "at least minimal support for the proposition that the employer was motivated

---

⁶ Nor does plaintiff does not allege that defendant City acted as an "intermediary" under the statute.

by discriminatory intent." *Id.* (quoting *Littlejohn*, 895 F.3d at 311).

"A showing of disparate treatment—that is, a showing that an employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case."[7] *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (citation omitted). "[A] plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of at least one similarly situated employee outside [her] protected group and sufficient facts from which it may reasonably be inferred that 'the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance.'" *Sutter v. Dibello*, No. 18-CV-817 (SJF)(AKT), 2021 WL 930459, at *21 (E.D.N.Y. Mar. 10, 2021) (quoting *Hu v. City of N.Y.*, 927 F.3d 81, 96-97 (2d Cir. 2019)). "A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016) (citation omitted) (affirming dismissal under 12(b)(6) where plaintiff failed to "allege that she and her co-worker had similar job descriptions or responsibilities").

Here, plaintiff has failed to sufficiently raise an inference of discrimination by demonstrating the disparate treatment. In various instances, the SAC refers to purported comparators such as Tommy Larson, Erin D'Antonio, Danielle Ford, Patrick Larson, Rita Butler, Robert Rykowski, Allen Horowitz, Mindy Abrams, and Julie Halfon.[8] *See generally* SAC. While plaintiff provides the titles of *some* of these individuals, the SAC is silent as to their duties,

---

[7] Though plaintiff need not satisfy the higher burden of establishing a prima facie case at the motion to dismiss stage. *See Vega*, 801 F.3d at 84 n.7 ("To be clear, we do not hold that a plaintiff in a Title VII case may *not* rely on the *McDonnell Douglas* formulation in pleading a claim of discrimination; we simply hold that a plaintiff is not *required* to do so.").

[8] References to James (Jake) Jacobi, Antonella Capalbi, and Cecelia Wims may also be considered purported comparators. SAC ¶¶ 53-57. But for the same reasons, are insufficiently plead as such.

7

responsibilities, workplace conditions, qualifications, or quality of their work. *Cf. Wooding v. Winthrop Univ. Hosp.*, No. 16-CV-4477 (ADS)(ARL), 2017 WL 2559942, at *10 (E.D.N.Y. June 12, 2017) ("The complaint does not state what positions [the alleged comparators] held; what their responsibilities were; their qualifications; or the quality of their work . . . The Plaintiff held the title of chief physician's assistant for most of his tenure; it is not alleged that either [comparator] held the same title or that they had similar responsibilities. *These facts are insufficient*." (citation omitted) (emphasis added). And to the extent that plaintiff does supply *some* information concerning these purported comparators, such as their titles, those allegations provide little support.[9] Accordingly, plaintiff has failed to meet its burden in establishing disparate treatment and her Equal Protection claim is DISMISSED without prejudice.[10]

**Conclusion**

Based on the foregoing, defendants' motion to dismiss is GRANTED. Plaintiff's request for leave to file an amended complaint is similarly GRANTED and shall be filed within 21 days consistent with the decision herein.

**SO ORDERED.**

Dated: February 20, 2024
   Central Islip, New York

                /s/ Gary R. Brown
                GARY R. BROWN
                United States District Judge

---

[9] Merely by way of example, it is questionable, at least as alleged, that a deputy comptroller, office aide, and animal control officer are similarly situated in all material respects concerning employment with plaintiff as an Administrative Clerk. *See* SAC ¶¶ 28, 44, 53.

[10] "It is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation, and here there is no constitutional violation." *Mastromonaco v. Cty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Accordingly, plaintiff's *Monell* claim is DISMISSED without prejudice.